UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT GINTER, an individual, and PAULINE MACE, an individual, | Case No. 1:25-cv-00027-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| COUNTY OF BOISE, a political subdivision of the State of Idaho, SCOTT TURNER, in his capacity as Sheriff of Boise County, STEVE WILKINS an individual, VIKKI WILKINS, an individual, ROBERT HUTCHINGS, an individual, and ROBERT COLE REEDER in his capacity as a deputy of Boise County, | |
| Defendants. | |

## INTRODUCTION

The Court has before it Defendants County of Boise, Scott Turner, and Robert Cole Reeder's Partial Motion to Dismiss (Dkt. 15) and Defendant Robert Hutchings' Motion to Dismiss the Amended Complaint (Dkt. 19). For the reasons explained below, the Court will partly grant and partly deny the former and will grant the latter. Plaintiffs shall have 21 days to file an amended complaint to cure the deficiencies described below.

## BACKGROUND

The following facts are taken from the Amended Complaint (Dkt. 5) and are presumed true at this stage.

This case stems from a bitter conflict between neighbors. Plaintiffs Robert Ginter and Pauline Mace are an interracial couple— Mr. Ginter is white, and Ms. Mace is of Italian/Mexican heritage—who moved to Centerville, Idaho, in 2019. Their neighbors to the north are Defendants Steve and Vikki Wilkins, who are the stepfather and mother of Defendant Scott Turner, the Sheriff of Boise County.[1]

Shortly after Mr. Ginter and Ms. Mace moved to Centerville, a dispute arose about sewage leaking onto their property from the Wilkins' septic system. This eventually escalated to threats of physical violence from the Wilkins, including a threat from Mr. Wilkins to shoot Mr. Ginter. Plaintiffs reported the threats to Sheriff Turner, but law enforcement took no action. In June 2020, Sheriff Turner was allegedly present while Mr. Wilkins brandished a pistol at Mr. Ginter. Later that day, Sheriff Turner allegedly damaged Mr. Ginter's tractor.

Around the same time, Plaintiffs also had hostilities with their neighbor to the south, Robert Hutchings. Mr. Hutchings accused them—falsely, according to

---

[1] The Amended Complaint describes the relationship inconsistently, at one point stating that Steve Wilkins is Sheriff Turner's stepson, rather than the other way around. *See Am. Compl.* ¶¶ 5-6, 19. Because Plaintiffs consistently assert that Vikki Wilkins is Sheriff Turner's mother, the Court assumes that Steve Wilkins is Sheriff Turner's stepfather, not his stepson.

Plaintiffs—of removing trees on his property. In June 2020, he went to their front porch and threatened to punch Mr. Ginter in the face. Mr. Ginter and Ms. Mace reported that threat but again did not receive a response.

The neighbors' relationships did not improve over the next several years. In August 2021, Ms. Mace attempted use a sheet of plywood to repair a hole at the bottom of the fence along the property line with the Wilkins'. Mr. Wilkins grabbed the plywood, threw it at Ms. Mace, and barely missed. Plaintiffs reported the incident, this time to both the Sheriff's Office and the Boise County Prosecutor, but law enforcement took no action. The following May, Plaintiffs asked the County Prosecutor to press perjury charges against Mr. Wilkins for false claims he made in a related civil dispute. The County Prosecutor responded that there was enough evidence to prosecute, but he would not do so because Sheriff Turner had refused to produce police reports related to the incidents. In January 2023, Mr. Wilkins fired a rifle toward Ms. Ginter. The Sheriff's office refused to press charged because Mr. Wilkins had a right to target practice on his property.

Plaintiffs began speaking out about Sheriff Turner's misconduct. In June 2023, Mr. Ginter and Ms. Mace attempted to hand out fliers in Idaho City criticizing the Sheriff's office. Sheriff Turner and the Idaho City Chief of Police ordered them to stop and warned that they would otherwise face arrest. Plaintiffs complied.

**MEMORANDUM DECISION AND ORDER - 3**

Things also deteriorated further between Plaintiffs and Mr. Hutchings. In May 2023, he claimed to own an additional two inches of property along their border. Two Sheriff's deputies, including Defendant Robert Cole Reeder, came to inform Mr. Ginter and Ms. Mace that they could not access those two inches of land. For the next several months, Mr. Hutchings walked along the property line while holding a gun. Plaintiffs complained, but the Sheriff's office took no action. Finally, on September 30, 2023, Mr. Hutchings began blaring music and revving his engine in front of Plaintiffs' house. When Mr. Ginter approached, Mr. Hutchings threated to "bash [his] teeth in." *Am. Compl.* ¶ 29, Dkt. 5. Mr. Ginter reported this to the County Prosecutor, who again refused to take action.

The final incident between Plaintiffs and Mr. Wilkins occurred around the same time, on September 21, 2023. Mr. Ginter was using his tractor to move rocks on his property, and Mr. Wilkins stood behind the trailer to interfere with this effort. A Sheriff's deputy eventually arrived—it is not clear who called—and spoke with both men. The deputy departed without taking any immediate action.

Two months later, Mr. Ginter was charged with disturbing the peace based on the September 21 incident and allegations that his car alarm had gone off late at night. The charges stemmed from a report filed by Deputy Reeder, who was not present for the September 21 altercation. Mr. Wilkins was not charged. The charge against Mr. Ginter for disturbing the peace was eventually dismissed.

Plaintiffs then filed this action against the County of Boise, Sheriff Turner, Deputy Reeder, Mr. Wilkins, Mrs. Wilkins, and Mr. Hutchings. They assert claims for selective enforcement (against Sheriff Turner, Deputy Reader, and the County of Boise); First Amendment retaliation (against Sheriff Turner and Deputy Reeder); malicious prosecution (against Sheriff Turner, Deputy Reeder, and the Wilkins); and assault (against Robert Hutchings and Steve Wilkins). They also seek punitive damages. The County defendants—the County of Boise, Sheriff Turner, and Deputy Reeder—move to dismiss all claims against them except the count of malicious prosecution under Idaho common law. Mr. Hutchings moves to dismiss the single assault claim against him.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). However, Rule

12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the truth of the allegations. *Twombly*, 550 U.S. at 556.

## ANALYSIS

### 1. Claims Against Sheriff Turner and Deputy Reeder

Sheriff Turner and Deputy Reeder argue that the constitutional claims against them in their official capacities—Counts I, II, III, and V—should be dismissed as redundant. A lawsuit against a local government official sued in his or her official capacity is treated as a suit against the local government itself, and the County of Boise is already named as a defendant. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Plaintiffs do not dispute this conclusion but explain that they really intended to sue Sheriff Turner and Deputy Reeder in their personal capacities. Although the caption explicitly states that each is sued in his official capacity, Plaintiffs contend that the text of the complaint makes clear that they meant otherwise, and they propose amending the caption to reflect this.

On this issue, Plaintiffs and Defendants agree in substance, if not entirely in form. The only dispute appears to be whether to dismiss the claims with leave to amend or to direct Plaintiffs to file an amended complaint to correct the caption. This is a distinction with little difference. The Court tends to agree with Plaintiffs that the substance of the Amended Complaint suggests that Sheriff Turner and

Deputy Reeder were sued in their personal capacities. Nonetheless, the error originated with Plaintiffs. To keep the record clear, and to ensure that Defendants have a full and fair opportunity to respond to the allegations against them, the Court will dismiss Counts I, II, and III. Count V will be dismissed as it pertains to Sheriff Turner and Deputy Reeder. For each claim, Plaintiffs will have leave to amend the complaint to cure these deficiencies.

### 2. Selective Enforcement Claim Against County of Boise

Next, the County of Boise moves to dismiss Plaintiffs' claim of selective enforcement, an equal protection violation.

Plaintiffs have brought this claim against the County pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To hold a local government liable under *Monell*, a plaintiff must show that "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007). Specifically, a plaintiff must establish that "(1) she was deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Mabe v. San Bernadino Cnty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Thus, municipal liability requires more than "isolated or sporadic incidents;

it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). At the same time, a plaintiff need not identify an explicit policy statement from the locality. Courts will infer an improper custom when an individual with "final policy-making authority" committed or ratified the constitutional violation. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Likewise, "a custom or practice can be inferred from . . . evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1234 (9th Cir. 2011).

The County argues that Plaintiffs have failed to provide specific facts from which a policy of selective enforcement can be inferred. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (plaintiff asserting *Monell* claim must allege "plausible facts supporting such a policy or custom"). But Plaintiffs describe a series of actions taken (and not taken) by the County Prosecutor, who in this case had final policy-making authority. *See State v. Storm*, 846 P.2d 230, 235 (Idaho Ct. App. 1993); *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). According to the Amended Complaint, he repeatedly refused to press charges against Mr. Wilkins for perjury and various acts of attempted violence, and against Mr. Hutchings for several violent threats. Instead, he brought

charges against Mr. Ginter over a nonviolent confrontation that Mr. Wilkins allegedly instigated.

Taking these accusations as true and viewing them in the light most favorable to Plaintiffs, the Amended Complaint states a claim for selective enforcement. Plaintiffs plausibly contend that the County Prosecutor ratified Sheriff Turner's equal protection violations or committed such violations himself. Plaintiffs have thus adequately pled that the County of Boise had a custom that showed deliberate indifference to certain residents' constitutional rights and was the moving force behind the constitutional violations. At this stage, that is enough for the claim to survive.

### 3. Assault Claim Against Mr. Hutchings

Finally, Mr. Hutchings seeks to be dismissed from the case because Plaintiffs have failed to state a claim against him for assault.

State law governs the assault claim. In Idaho, a plaintiff must establish that "(1) [t]he defendant acted intending to cause a harmful or offensive contact with the person of the plaintiff or a third person, or an immediate fear of such contact; and (2) [a]s a result, the plaintiff feared that such contact was imminent." *Hammer v. Ribi*, 401 P.3d 148, 152 (Idaho 2017). "Violent overt action" is not required, and "[a]ny act of such a nature as to excite apprehension of a battery may constitute an assault." *Id.* (quoting William L. Prosser, *Law of Torts* 40 (4th ed.

MEMORANDUM DECISION AND ORDER - 9

1971)). For this reason, the Idaho Supreme Court has cautioned against placing "too much emphasis . . . upon the idea of motion or gesture." *Id.* (quoting Prosser, *supra* at 40). The key inquiry, rather, is whether the defendant's actions create a "reasonable apprehension of immediate contact." *Id.*

Idaho imposes a two-year statute of limitations on assault claims, limiting Plaintiffs' claim to conduct that occurred after March 2023. *See* Idaho Code § 5-219(5). They allege two instances of assault. First, Mr. Hutchings regularly walked along the property line with a gun in a "menacing" matter. Plaintiffs do not describe any specific incidents but claim that this occurred for several months in mid-2023. Second, on September 30, 2023, Mr. Hutchings parked outside of Plaintiffs' home while blaring music and revving his engine, and when approached he threatened to "bash [Mr. Ginter's] teeth in." *Am. Compl.* ¶ 29, Dkt. 5.

Both accounts fail to allege the immediacy required for an assault claim. The first is not even a specific incident but several months of vaguely threatening conduct. The dearth of particularities belie the assertion that Mr. Hutchings intended to cause fear of *immediate* contact, or even that Plaintiffs felt such fear. The second instance comes somewhat closer but falls short for the same reasons. Though the conduct was obviously threatening, Plaintiffs have again failed to plausibly suggest that Mr. Hutchings meant to place them in fear of imminent contact. Indeed, he remained in his car as he made the threat, while Mr. Ginter

MEMORANDUM DECISION AND ORDER - 10

stood on the street, suggesting that imminent contact was not even possible. The behavior described in the complaint is uncomfortable and frightening, but it does not amount to assault.

For this reason, the Court will dismiss the assault claim against Mr. Hutchings but give Plaintiffs leave to amend.

## ORDER

**IT IS ORDERED that:**

1.  Defendants County of Boise, Scott Turner, and Robert Cole Reeder's Partial Motion to Dismiss (Dkt. 15) is **GRANTED IN PART and DENIED IN PART**. Counts I, II, III, and VII are **dismissed with leave to amend**. Count V is **dismissed with leave to amend** as it pertains to Defendant Turner and Defendant Reeder. In all other respects, the Motion is **DENIED**.

2.  Defendant Robert Hutchings' Motion to Dismiss the Amended Complaint (Dkt. 19) is **GRANTED.** Count VI is **dismissed with leave to amend as it pertains to Defendant Hutchings**.

3.  Plaintiffs must file an amended complaint within 21 days of the date of this Order.



DATED: July 16, 2025

_____
B. Lynn Winmill
U.S. District Court Judge